UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANNETTE HAAS, <br><br> Plaintiff, <br><br> v. <br><br> ZURICH NORTH AMERICA, an Illinois Corporation, and PAUL RUSKUSKY, an individual and in his official capacity as an employee of Zurich North America, <br><br> Defendants. | No. 05 C 1421 <br> Judge James B. Zagel |

**MEMORANDUM OPINION AND ORDER**

**I.      Introduction**

Plaintiff Annette Haas asserts various claims against her former employer, Zurich North American Insurance Co. ("Zurich").  I previously granted a partial dismissal of Plaintiff's claims. Defendant now moves for summary judgment on Plaintiff's remaining claims: discrimination on the basis of sex in violation of Title VII; violation of the Americans with Disabilities Act; retaliation in violation of the Family and Medical Leave Act ("FMLA"); and intentional infliction of emotional distress ("IIED").  For the reasons that follow, Defendant's motion is granted.

**II.     Factual Background**

Plaintiff began working for Zurich in February, 2000.  In April of the following year, she laterally transferred to a Business Analyst Position.  In May, 2003, Paul Ruskusky became Plaintiff's direct supervisor.  In addition to Plaintiff, two other individuals reported to Ruskusky:

Danielle Butkus and Donna Roberts.[1] Ruskusky, in turn, reported to Charles Slusher, Vice President, Claims Finance.

On Friday, June 26, 2003, Plaintiff facilitated a meeting with several other co-workers[2] that ended contentiously. Later that day, Plaintiff called Ruskusky to discuss the situation, but that call was marked by conflict as well.

The following Monday, Ruskusky gave Plaintiff a "conflict assessment" memorandum that was critical of Plaintiff's performance at the meeting and in their follow-up conversation. While Ms. Haas was not given an opportunity to provide input into the "conflict assessment" memorandum, it was outside of the regular performance evaluation regime, and Ruskusky eventually agreed that the memorandum would not become part of Plaintiff's personnel file.

In September, 2003, Mr. Ruskusky, Ms. Haas and others were on a business trip together in California. During one of their free evenings, the group had dinner together. After dinner, Ms. Haas and some of the other women in the group proposed stopping in a clothing store near the restaurant. The group was sharing rental cars, and Mr. Ruskusky apparently felt inconvenienced by this. He reacted by allegedly saying something to the effect that "we need less hormones and more testosterone on the team."

In late October, 2003, a position opened up on Plaintiff's team for a Level II Business Analyst. While Ms. Haas did not formally apply for the job, she did inform her superiors that she was interested in advancing. On October 27, 2003, Zurich hired Doug Meyers, a male, for the

---

[1]All three of the women that reported to Ruskusky had essentially the same job responsibilities.

[2]Mr. Ruskusky was present for part of the meeting, but left early.

2

Level II Business Analyst position. Mr. Meyers, unlike Plaintiff, has a college degree. In addition, Mr. Meyers had previously worked with Paul Ruskusky at another company.

Ms. Haas was frustrated that Mr. Meyers was hired, and she complained to Charles Slusher about it. In early to mid November, 2003, though, Ms. Haas was promoted to Level II Business Analyst, albeit without an immediate pay increase.[3]

After Mr. Meyers' tenure began, there were other events that caused Ms. Haas' ongoing consternation. For example, Mr. Ruskusky re-assigned some of Ms. Haas' work to Mr. Meyers and did not permit her to attend a business trip to Ohio. In addition, Ms. Haas suffered from endometriosis and at times sought to work from home. However, there were occasions when Mr. Ruskusky would not permit her to do so. Ms. Haas was also frustrated by the fact that Mr. Ruskusky required her to use her paid time off ("PTO") in half-day increments, even if she was out of the office for less than half of a day. However, Zurich's written policy requires full-time employees to utilize PTO in half-day increments.

Ms. Haas' frustrations notwithstanding, some positive things did happen during the year in which she reported to Mr. Ruskusky. As noted, the company promoted her to a Level II Business Analyst. In addition, Mr. Ruskusky rated her in the second highest category for her 2003 performance review, recommended a raise for her, and sent her multiple complimentary e-mails.

In late April, 2004, Ms. Haas became unable to work, and applied for FMLA leave and short-term disability benefits. It is Zurich's policy, consistent with the FMLA, to provide

---

[3]Plaintiff disputes the notion that this was a promotion. However, the record suggests that it was. Plaintiff's conclusory statements are insufficient to defeat summary judgment. *See Haywood v. North Am. Van Lines, Inc.*, 121 F.3d 1066, 1071 (7th Cir. 1997).

3

employees 12 weeks of protected leave.  After that 12-week period expires, it is the company's practice to fill the position if business needs require.  If the job remains unfilled upon the employee's return to work, it is the company's practice to reinstate the employee.  Further, if the position is filled, then the employee is given an opportunity to apply for other positions that might then be available.

On July 21, a Human Resources representative from Zurich informed Ms. Haas that she had exhausted her 12-week protected leave period.  The Zurich representative further informed Ms. Haas that her health care provider had informed the company that Ms. Haas would not be able to return to work until at least August 19, 2004.  Accordingly, the representative notified her that the company was going to attempt to fill her job.  On August 13, 2004, Zurich hired Joshua Logan to fill Ms. Haas' Level II Business Analyst position.  Ms. Haas was not released to return to work until October 30, 2004.  After some confusion regarding the extent to which Zurich's third-party disability vendor would provide disability benefits, Zurich ultimately terminated Ms. Haas' employment effective October 31.

## III. Discussion

### A. *Summary Judgment Standard*

Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56©; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-33 (1986) (stating that summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial"). A genuine issue of material fact exists when there is evidence on the basis of which a reasonable jury could find in the plaintiff's favor, allowing for all reasonable inferences drawn in a light most favorable to the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The non-moving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (*citing Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

    B.    *Plaintiff's Sexual Discrimination Claim*

        1.    **Legal Standard**

Ms. Haas may establish her sexual discrimination claim by either direct proof or indirect proof. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006). Plaintiff concedes that she is unable to offer direct evidence and focuses on the indirect method.

Under the indirect method, Ms. Haas must prove four elements to establish a *prima facie* case: (1) she is a member of a protected class; (2) she was performing at a level that met her employer's legitimate expectations; (3) she was subject to an adverse employment action; and (4) she was treated differently than a similarly situated person outside her protected class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Raymond*, 442 F.3d at 610.

If Ms. Haas establishes her *prima facie* case, then the burden would shift to Zurich to "articulate some legitimate, nondiscriminatory reason" for its termination. *McDonnell Douglas*, 411 U.S. at 802; *Goodwin v. Board of Trustees of Univ. of Ill.*, 442 F.3d 611, 617 (7th Cir. 2006). Once Zurich does so, the Plaintiff must show that Zurich's justification is pretextual. *McDonnell Douglas*, 411 U.S. at 804; *Goodwin*, 442 F.3d at 617-18.

## 2. Ms. Haas Fails to Establish a *Prima Facie* Case

Zurich does not dispute that Ms. Haas satisfies the first two elements of the *McDonnell Douglas* test. However, she is unable to show that she suffered an adverse employment action, nor is she able to show that she was treated differently than a similarly situated person outside her protected class. *Raymond*, 442 F.3d at 610.

### a. Plaintiff Did Not Suffer an Adverse Employment Action

A reasonable trier of fact could not find that Ms. Haas suffered an adverse employment action. Not everything that makes an employee unhappy is an actionable adverse action. *See Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996). The action must cause a materially adverse change in the terms and conditions of employment that is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993). Only tangible employment actions that cause a significant change in employment status constitute actionable adverse actions. *See Burlington Indus. v. Ellerth*, 524 U.S. 742, 753 (1998). Actions such as hiring, firing, failing to promote, reassigning with significantly different responsibilities, and a decision causing a significant change in benefits are tangible, adverse employment actions. *Id*.

#### I. Termination

Ms. Haas asserts that she "suffered the ultimate adverse job action – being fired from her job." However, by suggesting that she was fired from her job, Ms. Haas unfairly misrepresents the facts. Plaintiff does not contest the fact that Zurich's FMLA policy dictates that after an employee's 12-week job protection period expires, the company will seek to fill the position if business needs require. Neither does Ms. Haas contest the following: her 12-week job protection

period expired on July 21, 2004; her position was not filled by another individual until August 13, 2004; she was not even released to work until October 30, 2004; and her termination was not effective until October 31, 2004 – more than three months after the 12-week job protection period expired.

Under both federal law and Zurich's written policy, after July 21, 2004, Ms. Haas was not entitled to any protection. Her termination was a result of her failure to report for work. The law in this circuit is clear: "The FMLA . . . does not entitle any employee to 'any right, benefit, or position of employment other than . . . [that] which the employee would have been entitled had the employee not taken leave.'" *Phelan v. City of Chicago*, 347 F.3d 679, 683 (7th Cir. 2003) (*quoting* 29 U.S.C. § 2614(3)). By failing to attend work for more than three months after the expiration of her 12-week job protection period, Ms. Haas effectively resigned her employment at Zurich. No reasonable juror could construe Zurich's decision to technically remove her from the payroll under these circumstances as an adverse employment action.[4]

### ii. Other Actions

Ms. Haas also points to some other perceived slights from Mr. Ruskusky and claims that they are adverse employment actions. None of the incidents she points to – the "conflict assessment;" the exclusion from a business trip; the transfer of projects from Ms. Haas to Mr.

---

[4]Even were I to construe Zurich's decision to technically remove Ms. Haas from its payroll – more than three months after the expiration of her 12-week protected leave period – as an adverse employment action, it would not affect the ultimate outcome. Were Ms. Haas able to establish a *prima facie* case, under the *McDonnell Douglas* framework, the burden would shift to Zurich. At that point, Ms. Haas' failure to come in to work for over three months would suffice as a "legitimate, nondiscriminatory reason" for terminating her. *See Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1145 (7th Cir. 1994) (explaining that an employer's mere production of a legitimate nondiscriminatory reason for its action rebuts the presumption of discrimination created by the *prima facie* showing).

Meyers; periodically denying Ms. Haas' requests to work from home; the alleged "testosterone" comment; or the promotion unaccompanied by a salary increase – amount to an adverse employment action.

The "conflict assessment" that Mr. Ruskusky drafted never even became a part of Ms. Haas' official personnel file. Thus, there is no basis upon which a reasonable juror could find that it amounted to an adverse employment action. Moreover, it is well established that "negative evaluations, standing alone, do not constitute adverse employment actions." *Haywood v. Lucent Technologies, Inc.*, 323 F.3d 524, 532 (7th Cir. 2003). Thus, even if the "conflict assessment" had become part of her personnel file, it falls well within the range of criticism that a supervisor may permissibly direct towards his/her subordinate. Similarly, Ms. Haas' exclusion from the business trip to Ohio is too trivial to amount to an adverse employment action. *See Markel v. Board of Regents of Univ. of Wisconsin Sys.*, 276 F.3d 906, 911-12 (7th Cir. 2002) ("[N]ot everything that makes an employee unhappy is an actionable adverse action."). In addition, the fact that Ruskusky transferred some of Ms. Haas' projects to Mr. Meyers is not an adverse employment action. It is certainly within the discretion of a supervisor to distribute and re-distribute work, particularly when a new employee begins. In *Moser v. Indiana Dept. of Corrections*, 406 F.3d 895, 904 (7th Cir. 2005), the Seventh Circuit held that it was not an adverse employment action even where "duties have diminished in importance, challenge and variety." Similarly, this was not an adverse employment action.

The fact that Mr. Ruskusky did not permit Ms. Haas to work from home every time she requested is also not an adverse employment action. It is not an adverse employment action to

8

refuse to grant an employee a discretionary benefit to which that employee is not necessarily entitled. *See Rabinovitz v. Pena*, 89 F.3d 482, 488-89 (7th Cir. 1996).

Though Mr. Ruskusky is unable to recall making the "testosterone" comment, I will assume, for purposes of summary judgment, that he did. *See* Fed.R.Civ.P. 56©; *Crim v. Bd. of Educ. of Cairo Sch. Dist. No.1*, 147 F.3d 535, 540 (7th Cir. 1998). Even assuming he made the statement, though, an offhand comment such as this does not rise to the level of an adverse employment action. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998) (internal quotations omitted).

Lastly, Zurich's decision to promote Ms. Haas from a Level I to a Level II Business Analyst, even though it was unaccompanied by a corresponding pay increase, also fails to amount to an adverse employment action. Even a purely lateral transfer is seldom considered an adverse employment action. *See O'Neal v. City of Chicago*, 392 F.3d 909, 913 (7th Cir. 2004); *see also Place v. Abbott Labs.*, 215 F.3d 803, 810 (7th Cir. 2000) ("[B]eing shifted to an essentially equivalent job that [an employee does] not happen to like as much does not a Title VII claim create."). If a purely lateral transfer does not constitute an adverse employment action, then *a fortiori*, a promotion does not constitute one either.

Plaintiff's failure to establish an adverse employment action is fatal to her claim. Nevertheless, I will briefly address the final element of the *prima facie* case.

> b. Plaintiff also Fails to Establish that She was Treated Differently Than a Similarly Situated Male

Plaintiff first asserts that she ought not be required to prove the "similarly situated" element of the *prima facie* case. She relies on a Seventh Circuit case from 1999 entitled *Flores v. Preferred Technical Group*, 182 F.3d 512 (7th Cir. 1999), in which the court excludes the "similarly situated" element from the list of elements needed to establish a *prima facie* case. 182 F.3d at 515.

Plaintiff's reliance on *Flores* notwithstanding, she is nevertheless required to prove the "similarly situated" element. First, since 1999, the Seventh Circuit has "consistently included the similarly situated element in the *prima facie* case." *Paz v. Wauconda Healthcare and Rehab. Centre*, No. 04 C 3341, 2005 WL 1243394, at *4 (N.D.Ill. May 23, 2005) (citing several Seventh Circuit cases that include the "similarly situated" element). Second, though the *Flores* court does not expressly include the "similarly situated" element in its list, it still focuses on the concept in its analysis. *Flores*, 182 F.3d at 514 ("The linchpin of the plaintiff's *prima facie* case is evidence of disparate treatment between members of the plaintiff's protected class and nonmembers."). Lastly, the *Flores* court "did not state that a plaintiff could use [the *McDonnell Douglas* analysis'] flexibility as a guise to alter the *prima facie* case and edit out any of the elements that plaintiff is incapable of meeting." *Paz*, No. 04 C 3341, 2005 WL 1243394, at *4.

Ms. Haas is unable to prove that Zurich treated her differently than a similarly situated male employee. In order to show that another employee is "similarly situated," Plaintiff must show that she is directly comparable to that employee in all material respects. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). This includes relevant factors such as whether the employees had the same supervisor, were subject to the same standards, engaged in

similar conduct, and their relative levels of education. However, "an employee need not show complete identity in comparing himself to the better treated employee . . ." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000).

Ms. Haas points to two male employee – Douglas Meyers and Joshua Logan – and claims they were treated more favorably than she was. However, Ms. Haas offers no evidence suggesting that either was similarly situated, and she fails to establish that either was treated more favorably.

Ms. Haas is unable to show that Mr. Meyers was treated better than she was. While Meyers was hired as a Level II Business Analyst before Plaintiff, the amount of time involved was negligible. Meyers got the job in late October, and Plaintiff got it sometime in early to mid-November. None of the other incidents of disparate treatment Plaintiff complains of are actionable.

Ms. Haas also claims that Joshua Logan was a similarly situated male who was treated more favorably than she was, but this assertion is without merit as well. Zurich, pursuant to its FMLA policy, hired Mr. Logan to fill a Level II Business Analyst position after Plaintiff's 12-week protected period had already expired. Plaintiff has no basis upon which to claim that Mr. Logan was treated more favorably than she was.

Ms. Haas is unable to establish a *prima facie* case. Thus, summary judgment is appropriate on this claim.

      C.     *Defendant did not Violate the Americans with Disabilities Act (ADA)*

Ms. Haas also alleges that Zurich violated the ADA. The ADA prohibits employers from discriminating against persons with disabilities in connection with employment activities

including advancement and discharge. 42 U.S.C. § 12112. The ADA protects "qualified individual[s] with a disability," defined as "individual[s] with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position." *Id.* § 12111(8). An employee must be disabled within the meaning of the statute in order to qualify for its protection.

Plaintiff, in effect, concedes that she is not actually disabled.[5] However, she also correctly points out that this does not necessarily preclude her from establishing an ADA claim. Individuals who are "regarded as" having a disability are disabled within the meaning of the ADA. *See* 42 U.S.C. § 12102(2)©; *see also Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999). However, Plaintiff fails to raise a material issue of fact that survives summary judgment.

First, she fails to establish the fact that Zurich actually regarded her as disabled. The only facts Ms. Haas points to are that a Zurich representative asked for her company computer, ID badge, and pager back, and that they hired someone to replace her. These facts would not lead a reasonable juror to conclude that Defendant regarded Ms. Haas as having a disability. Ms. Haas also alleges that Mr. Ruskusky commented to other workers that perhaps she was too sick to work, but that fact is unsupported by the record.

In addition, Plaintiff offers no facts that could lead a rational juror to conclude that Zurich discriminated against her. In support of this assertion, Ms. Haas offers only the following: her supervisor frequently cancelled their weekly status meetings; she was required to use her paid time off ("PTO") in half-day increments when leaving for doctors' appointments; the company replaced her after her 12-week protected leave period expired; and the company did not inform

---

[5]Ms. Haas makes no attempt, in her opposition to Defendant's motion for summary judgment, to argue that she is actually disabled.

her in a timely fashion[6] of her opportunity to reapply for a position at Zurich. Quite simply, these are all relatively insignificant events. While they may have frustrated Ms. Haas, they do not – standing alone or collectively – yield the conclusion that Zurich discriminated against her.

As Ms. Haas is unable to support her assertions that Defendant regarded her as disabled and discriminated against her on that basis, summary judgment is proper on this claim.

> D.   *Defendant did not Retaliate Against Ms. Haas for Exercising her Rights Under the FMLA*

Plaintiff alleges that Zurich discriminated against her under the FMLA because they terminated her after she exercised her FMLA rights. As I noted in my Title VII analysis above, while it may technically be accurate, it is nevertheless misleading to construe Ms. Haas as having been "terminated" from her job. Defendant provided her with the FMLA-mandated 12 weeks of protected leave. After that 12-week period expired, Ms. Haas did not return to work for an additional three months. By asserting – under such circumstances – that Zurich retaliated against her for exercising her FMLA rights, Plaintiff essentially asks to have the statute rewritten to extend the period of protected leave. The FMLA does not grant employees the right to unilaterally extend the period of protected leave. *See Myrick v. Aramark Corp*, No. 02 C 5890, 2004 WL 906176, at *9 (N.D.Ill. Apr. 28, 2004); *Strykowski v. Rush N. Shore Med. Ctr.*, No. 02 C 0778, 2003 WL 21788987, at *6 (N.D.Ill. July 30, 2003).

---

[6]The record indicates that Zurich notified Ms. Haas in July of the fact that she would have a two-week window to apply for a different position after she was authorized to return to work. Further, Ms. Haas acknowledged in her deposition that she had a two-week period in which she could apply after she was released to return to work.

13

### E. Plaintiff is Unable to Establish an IIED Claim

Ms. Haas also asserts a claim for intentional infliction of emotional distress. To make out a valid IIED claim under Illinois law, Ms. Haas must show that: "(1) the defendant's conduct was extreme and outrageous, (2) the defendant intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would inflict severe emotional distress, and (3) the defendant's conduct did cause severe emotional distress." *Van Stan v. Fancy Colours & Co.,* 125 F.3d 563, 567 (7th Cir. 1997); *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988).

The Seventh Circuit explains: "Illinois courts have been hesitant to find intentional infliction of emotional distress in the workplace because, if everyday job stresses resulting from discipline, personality conflicts, job transfers or even terminations could give rise to a cause of action for intentional infliction of emotional distress, nearly every employee would have a cause of action." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 605 (7th Cir. 2006) (*citing Graham v. Commonwealth Edison Co.*, 742 N.E.2d 858, 867 (Ill. App. Ct. 2000)) (internal quotations omitted). For conduct at work to give rise to a cause of action, it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Public Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976).

While the *Naeem* defendant's conduct was found to be extreme and outrageous, the court only made that determination after finding that the actions taken against Ms. Naeem "clearly go far beyond typical on-the-job disagreements." *Id.* at 605-06. Conversely, in the case before me, the only evidence Ms. Haas points to in asserting that Defendant's conduct was extreme and outrageous is that Mr. Ruskusky required her to take paid time off ("PTO") in half day increments. This argument is unconvincing on its face. Its persuasiveness is further undermined

by the fact that Zurich's written policy requires full-time employees to take PTO in half day increments. A supervisor enforcing the company's written time-off policy can hardly be considered to rise to the level of extreme and outrageous conduct.[7]

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: September 29, 2006

---

[7] In light of Ms. Haas' inability to meet her burden with regard to the first element needed to prove her IIED claim, I reach neither the remaining elements of that claim, nor Defendant's argument that the claim is preempted.